UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARICELA GOMEZ,<br><br>                    Plaintiff,<br><br>   v.<br><br>OMV MEDICAL, INC.,<br><br>                    Defendant. | Case No. 21-cv-1283-BAS-KSC<br><br>**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**<br>**(ECF No. 21)** |

     Before the Court is Defendant's Motion for Summary Judgment brought pursuant to Federal Rule of Civil Procedure 56. (Mot., ECF No. 21.) Defendant files a Memorandum in support of its Motion (Mem., ECF No. 21-1), Plaintiff opposes (Opp'n, ECF No. 23), and Defendant replies (Reply, ECF No. 24). The Court held oral argument on February 8, 2023. (ECF No. 35.) Having considered the parties' filings and oral argument, the Court **GRANTS** Defendant's Motion.

## I. BACKGROUND

Defendant provides medical and allied health personnel to a Naval Medical Center in San Diego pursuant to a contract with the United States Department of Defense. (Joint Statement of Undisputed Facts ("JSUF") ¶ 1, ECF No. 30.) Defendant won the contract with the Department of the Navy after a competitive bidding process, and the Department of Defense compensates Defendant at fair market rate. (*Id.* ¶ 4.) Defendant employed Plaintiff as a full-time pharmacy technician from February 2019 until her termination in January 2021. (*Id.* ¶ 5.) When hiring Plaintiff, Defendant provided her with its Employee Handbook ("Handbook"), which contained its leave policies. (*Id.* ¶ 6.) The Handbook requires employees to submit the Employer's Request for Leave forms and submit them to Human Resources when requesting Family and Medical Leave Act ("FMLA") leave. (*Id.* ¶ 8.)

On November 19, 2020, Plaintiff emailed Porsha Jones, Defendant's contract manager, to ask about "the process to go on family leave or disability." (*Id.* ¶ 15.) Jones wrote back requesting "a little more detail[] in order to point you in the right direction," for example, the reason for and the duration of the leave. (*Id.* ¶ 16.) Plaintiff responded she was scheduled to have surgery on December 15 and would be absent "for 1-2 weeks depending on how the surgery goes." (*Id.* ¶ 17.) Plaintiff also requested an additional three weeks to be taken "now" for her daughter in elementary school who "needs full time care." (*Id.*) Later that day, Plaintiff replied to the email thread again to say that she no longer had a babysitter for her daughter and would not be into work the following day on November 20, 2020. (*Id.* ¶ 18.) Jones directed Plaintiff to contact Serena Mathieson, Defendant's Director of Human Resources, to discuss leave options. (*Id.* ¶ 19.)

Plaintiff's leave began on November 20, 2020. That same day, Plaintiff contacted Mathieson requesting information regarding "family leave and disability." Plaintiff stated that her "family leave would need to start as of November 18" and "disability . . . as of December 15." (*Id.* ¶ 20.) Mathieson responded a few days later and asked, "1. How long do you plan to be on leave? 2. You indicated disability, is this medically related? If so,

you may qualify for FMLA." (*Id.* ¶ 21.) Plaintiff did not initially respond to Mathieson, but after Jones followed up to ask for a return-to-work date, Plaintiff replied that she would not be in to work that week. (*Id.* ¶ 23.) Jones wrote back, "Thank you for the information. Ma'am- please be mindful that you must call in to OMV when calling out. I need an exact return to work date as the base is inquiring. Currently you are taking leave without pay. The base has expressed concern regarding your attendance. Please provide me a return to work date." (*Id.* ¶ 24.)

Four days later, Jones emailed Mathieson about Plaintiff:

> Have you been in contact with this employee? Her attendance is impacting the base drastically. Currently she is taking leave with no pay and has failed to communicate effectively. She should be calling OMV for every call out, yet I am emailing her asking her if she is coming to work. This is unacceptable. Has she filed [FMLA]? She is California and I know things are tricky with that state…HELP…lol.

(*Id.* ¶ 25.) On November 30, ten days after Jones' last email to Plaintiff, Plaintiff emailed back stating she was going on family leave from November 18 to December 14, and then "on disability for two weeks" starting December 15. (*Id.* ¶ 26.)

On December 15, 2020, Plaintiff had surgery on her ear. (*Id.* ¶ 28.) A week later, Jones followed up with Plaintiff to ask again for a return-to-work date. (*Id.* ¶ 31.) Plaintiff replied she does not have a return-to-work date yet but was going to see her doctor the following day, December 23. (*Id.* ¶ 32.) Twelve days passed and then on January 4, Jones reached out to Plaintiff to ask for an update. (*Id.* ¶ 34.) Three more days elapsed before Plaintiff responded that she had another medical appointment scheduled for the following day, January 8, 2021, and that she would have more information afterwards. (*Id.* ¶ 35.)

On January 8, 2021, Plaintiff's surgeon wrote in an After Visit Summary, "[Plaintiff's] ear is healing as expected . . . [and] it is safe for [Plaintiff] to go back to work without restrictions this coming Monday, January 11." (*Id.* ¶ 36.)[1] That same day,

---

[1] At oral argument, Plaintiff's counsel conceded Plaintiff never communicated to any of Defendant's employees that her surgeon cleared her for work on January 8th. (ECF No. 35.)

Plaintiff emailed Mathieson to ask whether Defendant provided family leave with pay. (*Id.* ¶ 37.)

On January 11, 2021, Tierra Harper, Defendant's Human Resources Manager, emailed Plaintiff, stating:

> I wanted to follow up to confirm your current leave status. Currently we are not aware of your estimated return date and what leave status(es) have supported your absence. **I am request[ing] that you provide a copy of the FMLA forms submitted and completed by your Physician or Dr.** (*These forms should have been previously submitted to HR, Serena). Additionally, you are currently absent, in EXCESS of the 12 weeks provided by FMLA… we have not received any documents to support any additional leave or an additional FMLA claim. . . . Please be advised based on the information we have, there is no reason to believe you would not be able to return to work. *If you should have any documents that support why you would not be able to return as of January 18, 2021, those documents should be presented, as well. Failure to provide these documents will result in removing you from schedule and disabling access to your work site.

(*Id.* ¶ 39 (emphasis in original).)

On January 14, Tammy Hester, Defendant's then-Head of Government Affairs, emailed Plaintiff:

> I am reaching out to you as the government is in the process of deactivating your security clearance this morning. OMV Medical has made several attempts to speak to you, however, you have not returned our phone calls and emails. You made a request to take medical leave back in Oct/Nov 2020 with a return date of Dec 2020. Since this time, you have not responded back to our repeated calls. Please note, if I do not hear back from you by COB today, your security clearance will be removed and you will not be able to return to San Diego Naval Station.

(*Id.* ¶ 41.) That day, Harper and Hester both left voicemails on Plaintiff's telephone, and Harper sent an internal email conveying she had "also reached out to [Plaintiff's] emergency contact and left a [voicemail]." (*Id.* ¶¶ 42–43.) At that point, Defendant's employees began revoking Plaintiff's credentials and taking her off contract. (*Id.* ¶ 45.) Later that day, Plaintiff replied to Hester's email, "Hello, yes [my] doctor will be extend[ing] my disability for another couple weeks, I don't have a date yet to return to

work. I go to my doctor's appointment again on January 22, 2021." (*Id.* ¶ 46.) Regardless, Plaintiff was terminated under Defendant's "No call/No-show" policy, effective the following day. (*Id.* ¶ 47.)

On January 15, 2021, after Plaintiff had been terminated, she provided Defendant with two doctor's notes. The first, dated November 24, 2020 and signed by a primary care physician, read, "[Plaintiff] has been off work since 11/18/2020, taking care of her daughter who is still with her own medical problems. [Plaintiff] will reach her daughter's PCP to request FMLA forms be completed." (*Id.* ¶ 50; Ex. I to Diton Decl. 79, ECF No. 21-4.) The second, dated January 15, 2021 and signed by a primary care physician's assistant, read, "excuse Maricela from work from 12/15/2020-1/29/2021 due to medical reasons." (JSUF ¶ 52; Ex. J to Diton Decl. 82, ECF No. 21-4.)

On January 22, 2021, Plaintiff had another appointment with her surgeon. In the After Visit Summary, Plaintiff's surgeon stated: "Of note, I see in the chart that she got an extension for her disability through her primary care provider's office. In my opinion there is no reason that she should not be able to work at this time with regards to recovering from the surgery with me. She can wear a cotton ball in her ear when she is working to collect the otorrhea." (JSUF ¶ 54; Ex. K to Diton Decl. 88, ECF No. 21-4.)

Plaintiff commenced this action in the Superior Court of the State of California, County of San Diego, naming as Defendants OMV Medical, Inc. and Berisa Moloian. (ECF No. 1 at 2.) Defendants filed a notice of removal less than thirty days later. (*Id.* at 3.) After removal, Defendants moved to dismiss the Complaint for failure to state a claim under Rule 12(b)(6). (ECF No. 6.) Plaintiff then filed an Amended Complaint that dropped several causes of action and Berisa Moloian as a defendant. (FAC, ECF No. 7.) Defendant OMV Medical, Inc. answered, and the parties proceeded to discovery. (ECF No. 9.) Defendant then filed the present Motion for Summary Judgment. (Mot.)

## II.   LEGAL STANDARD

Summary judgment is proper when a "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is "genuine" if there is evidence in the record sufficient for a reasonable trier of fact to decide in favor of the nonmoving party. *Id.* The court views the inferences reasonably drawn from the materials in the record in the light most favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986), and "may not weigh the evidence or make credibility determinations," *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997), *overruled on other grounds by Shakur v. Schriro*, 514 F.3d 878, 884–85 (9th Cir. 2008).

The moving party bears both the ultimate burden of persuasion and the initial burden of producing those portions of the pleadings, discovery, and affidavits that show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where, as here, the moving party will not bear the burden of proof on an issue at trial, it "must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). "If a moving party fails to carry its initial burden of production, the nonmoving party has no obligation to produce anything, even if the nonmoving party would have the ultimate burden of persuasion at trial." *Id.* at 1102–03.

"If, however, a moving party carries its burden of production, the nonmoving party must produce evidence to support its claim or defense." *Id.* at 1103. In doing so, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus.*, 475 U.S. at 586. Rather, a nonmoving party must "identify with reasonable particularity the evidence that precludes summary judgment." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996). If a nonmoving party fails to produce evidence that supports its claim or defense, courts enter summary judgment in favor of the movant. *Celotex*, 477 U.S. at 323.

### III. ANALYSIS

Plaintiff alleges violations of three federal statutes: the Americans with Disabilities Act ("ADA"), the Rehabilitation Act, and the FMLA.

#### A. Violations of the ADA

Plaintiff's first three causes of action arise under the ADA,[2] and they all suffer the same fatal flaw: Plaintiff has not presented evidence to show she was disabled. "Only a 'qualified individual with a disability' may state a claim for discrimination." *Kennedy v. Applause, Inc.*, 90 F.3d 1477, 1480 (9th Cir. 1996). To proceed under the ADA, a plaintiff carries the initial burden of establishing she was a person with a disability. *Id.* at 1481. The ADA defines "disability" in three ways: (1) a physical or mental impairment that substantially limits one or more major life activities of such individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment. 42 U.S.C. § 12102(1).

Plaintiff argues she qualifies under the first definition and seems to assert "hearing" and "working" are the "major life activities" that were substantially limited. (*See* Opp'n 13–14 (arguing Plaintiff was "still in pain" and bolding the word "hearing" in the statute); FAC ¶ 39 (suggesting Plaintiff could not work during her surgical recovery).) Accordingly, the issue is whether Plaintiff has pointed to evidence showing an impairment substantially limited her hearing or working at the time of her termination. The Court finds she has not.

Courts must consider the "nature, severity, duration, and impact of the impairment" to determine if it substantially limits a major life activity. *Fraser v. Goodale*, 342 F.3d 1032, 1039 (9th Cir. 2003). Plaintiff highlights several pieces of evidence. First, the January 8 doctor's report mentions that Plaintiff was still

---

[2] The Court also notes that Plaintiff's third cause of action—failure to engage in a good faith interactive process under the ADA—is a pleading error: "[T]here exists no stand-alone claim for failing to engage in the interactive process. Rather, discrimination results from denying an available and reasonable accommodation." *Snapp v. United Transp. Union*, 889 F.3d 1088, 1095 (9th Cir. 2018).

experiencing "discomfort and drainage." (Opp'n 13–14.) Second, her deposition testimony indicates she was still "in a lot of pain" and "very dizzy or lightheaded" after the surgery. (*Id.* at 14.) Third, in an email on January 7, she stated, "I'm still in recovery for my surgery . . . My ear is still draining and bleeding." (*Id.*)

None of the proffered evidence demonstrates Plaintiff was disabled under the ADA. The fact that she experienced these symptoms is insufficient. Rather, Plaintiff must point to evidence showing her pain, dizziness, or drainage substantially limited a major life activity. In *Coons v. Secretary of United States Department of Treasury*, the plaintiff submitted a letter from his doctor stating he suffered from various physical and mental impairments and was receiving treatment. 383 F.3d 879, 886 (9th Cir. 2004). The Ninth Circuit held this evidence alone failed to establish a record of an impairment that substantially limits a major life activity—the second definition of disabled under the ADA—because the letter did not articulate *how* his impairments affected any major life activity. *Id.*

The same logic extends to the first definition of disabled under the ADA: Plaintiff must produce evidence that her impairment substantially limited a major life activity. *See Thorn v. BAE Sys. Haw. Shipyards, Inc.*, 586 F. Supp. 2d 1213, 1221 (D. Haw. 2008) ("Missing from Plaintiff's evidence and argument is any explanation of precisely *how* Plaintiff's impairments affect Plaintiff's ability to walk, stand, and lift."); *Cross v. Lowe's Home Ctrs., Inc.*, No. 2:04-cv-1671 JWS, 2006 WL 8440446, at *4 (D. Ariz. June 12, 2006) (granting summary judgment because plaintiff failed to show that his Meniere's disease, which caused intermittent dizziness and vertigo, limited a major life activity); *Atencio v. Joint Jerome Sch. Dist. No. 261*, 837 F. Supp. 2d 1158, 1166 (D. Idaho 2011) ("With respect to such activities as walking, reading, concentrating, socializing, procreating, shopping, and hiking, [plaintiff] fails to explain how her condition prevents or severely restricts her from doing these activities. . . . Vague and conclusory assertions of difficulty performing a major life activity do not create a genuine issue of material fact."). None of Plaintiff's evidence demonstrates how her post-

surgery symptoms substantially limited a major life activity. This alone sinks Plaintiff's prima facie case under the ADA.

In addition, Ninth Circuit precedent supports an alternative reason for granting summary judgment. In *Garcia v. Salvation Army*, the Ninth Circuit opined, "A doctor's release to work without restrictions supports a finding that a person no longer suffers from a 'disability.'" 918 F.3d 997, 1010 (9th Cir. 2019). In an After Visit Summary on January 8, Plaintiff's surgeon wrote, "[Plaintiff's] ear is healing as expected . . . [and] it is safe for [Plaintiff] to go back to work without restrictions this coming Monday, January 11." (JSUF ¶ 36.) Plaintiff was terminated six days later. (*Id.* ¶ 47.) Thus, the facts here cross a bright line: When Plaintiff's surgeon cleared her for work, her surgical recovery no longer qualified her as disabled under the ADA.

Plaintiff's briefing does not directly address *Garcia*. (Opp'n 13–14.) When pressed at oral argument, Plaintiff's counsel contended that the January 15 note from Plaintiff's primary care physician's assistant factually disputed her ability to work. (ECF No. 35.) The physician's assistant wrote, "Please excuse Maricela for her absence from work from 12/15/2020-1/29/2021 due to medical reasons." (JSUF ¶ 52; Ex. J to Diton Decl. 82, ECF No. 21-4.) But this vague note is not enough to create a genuine factual dispute. The note does not specify any particular medical reason for Plaintiff's excusal from work. Indeed, in a subsequent After Visit Summary on January 22, Plaintiff's surgeon wrote, "Of note, I see in the chart that she got an extension for her disability through her primary care provider's office. In my opinion there is no reason that she should not be able to work at this time with regards to recovering from the surgery with me. She can wear a cotton ball in her ear when she is working to collect the otorrhea." (JSUF ¶ 54.) The Court finds that, on this record, no "reasonable trier of fact" could decide in Plaintiff's favor. *See Anderson*, 477 U.S. at 248, 252 ("The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.").

The Court notes there may be a question as to whether *Garcia* applies to chronic, episodic conditions. The ADA Amendments Act of 2008 clarified, "An impairment that is episodic or in remission is a disability if it would substantially limit a major life activity when active." 42 U.S.C. § 12102(4)(D). In other words, an episodic condition may qualify as a disability, even if an individual suffers *no limitations* in periods of remission. From the record, Plaintiff could have conceivably made the argument that her ear condition is chronic and episodic. But neither Plaintiff's briefing nor her counsel's oral argument articulated this point, much the less "identif[ied] with reasonable particularity the evidence that precludes summary judgment." *Keenan*, 91 F.3d at 1279. Therefore, the Court declines to analyze the issue further.

Plaintiff relies entirely on her surgical recovery to substantiate her disability under the ADA. But she points to no evidence showing how her post-surgery symptoms substantially limited a major life activity at the time of her termination. Further, Ninth Circuit precedent dictates that when Plaintiff's surgeon unambiguously cleared her for work, she was no longer disabled under the ADA. Accordingly, the Court finds there is no genuine dispute of fact with respect to Plaintiff's ADA claims. The Court **GRANTS** summary judgment to Defendant on Plaintiff's first, second, and third causes of action.

### B. Violations of the Rehabilitation Act

Plaintiff also alleges violations of the Rehabilitation Act. The main difference between the Rehabilitation Act and the ADA is scope: Title II of the ADA applies to all employers, and the Rehabilitation Act applies only to entities "extended Federal financial assistance." 29 U.S.C. § 794(b); *see U.S. Dep't of Transp. v. Paralyzed Veterans of Am.*, 477 U.S. 597, 605 (1986) ("Under the program-specific statutes, Title VI, Title IX, and § 504 [of the Rehabilitation Act], Congress enters into an arrangement in the nature of a contract with the recipients of the funds: the recipient's acceptance of the funds triggers coverage under the nondiscrimination provision."). Thus, Plaintiff's claim under the Rehabilitation Act is meritless unless Defendant is "extended Federal financial assistance." *See* 29 U.S.C. § 794(b).

The Ninth Circuit has distinguished a "subsidy," which does constitute Federal financial assistance, from "compensatory" financing, which does not. *Jacobson v. Delta Airlines, Inc.*, 742 F.2d 1202, 1210 (9th Cir. 1984). "We think that in determining which programs are subject to the civil rights laws courts should focus not on market value but on the intention of the government. Courts should determine whether the government intended to provide assistance or merely to compensate." *Id.* In the same vein, the United States Department of Defense regulations define Federal financial assistance as "[a]ny grant, loan, [or] contract (other than a procurement contract or a contract of insurance or guaranty)." 32 C.F.R. § 56.3(b).

In this case, the Amended Complaint alleges Defendant is "covered by the Rehabilitation Act because it is a private employer that holds significant contracts with federal agencies, including but not limited to the contract related to the present action, under which Plaintiff was employed by Defendant OMV for the U.S. Navy in the Naval Medical Center in Balboa Park." (FAC ¶ 84.) But the existence of a contract does not show that the government intended to provide assistance. Defendant has provided a Declaration from Serena Mathieson, its Director of Human Resources, stating, "OMV won the relevant contract with the Department of the Navy after a competitive bidding process." (Mathieson Decl. ¶ 6, ECF No. 21-3.) This evidences that the government did not intend to subsidize Defendant. *See DeVargas v. Mason & Hanger-Silas Mason Co.*, 911 F.2d 1377, 1382–83 (10th Cir. 1990) (relying on the fact that there was a "competitive bidding process" to conclude the defendant did not receive federal financial assistance under the Rehabilitation Act); *Bowers v. Nat'l Collegiate Athletic Ass'n*, 118 F. Supp. 2d 494, 532 (D.N.J. 2000) (relying on testimony that the defendant "periodically competitively bids" for contracts to determine that it had a "compensatory contractual relationship with the federal government" and was not "a recipient of federal financial assistance"), *opinion amended on reargument*, 130 F. Supp. 2d 610 (D.N.J. 2001).

Plaintiff points to no evidence to refute this assertion. Instead, Plaintiff argues the Rehabilitation Act applies to government contractors based on a single Fourth Circuit

case, *Trinity Industries, Inc. v. Herman*, 173 F.3d 527 (4th Cir. 1999). (Opp'n at 28.) But *Trinity Industries* examined the "affirmative action reporting requirements" and not the anti-discrimination requirements of the Rehabilitation Act. 173 F.3d at 528. These two provisions are distinct: the affirmative action requirement applies to some contractors and the anti-discrimination provision does not. *Compare* 29 U.S.C. § 793 (outlining affirmative action requirements for "[a]ny contract in excess of $10,000 entered into by any Federal department or agency"), *with* 29 U.S.C. § 794 (outlining anti-discrimination requirements for entities "extended Federal financial assistance"). Therefore, *Trinity Industries* is not relevant to Plaintiff's claim.

The Court finds there is no genuine dispute of fact with respect to Plaintiff's Rehabilitation Act claim. Thus, the Court **GRANTS** summary judgment to Defendant on Plaintiff's fourth cause of action.

### C. Violations of the FMLA

Plaintiff alleges two causes of action under the FMLA: discrimination for requesting or using FMLA leave and retaliation for requesting or using FMLA leave. Defendants are entitled to summary judgment on both.

#### 1. Discrimination for Requesting or Using FMLA Leave

The FMLA creates "two interrelated, substantive employee rights." *Bachelder v. Am. W. Airlines, Inc.*, 259 F.3d 1112, 1122 (9th Cir. 2001). First, an employee has the right to take up to twelve weeks of leave for protected reasons. *Xin Liu v. Amway Corp.*, 347 F.3d 1125, 1132 (9th Cir. 2003). Second, an employee who takes FMLA leave has the right to be restored to his or her original position or to a position equivalent in benefits, pay, and conditions of employment upon return from leave. *Id.* In other words, under the FMLA, "employees are entitled to take up to twelve weeks of leave each year and are guaranteed reinstatement after exercising their leave rights." *Bailey v. Sw. Gas Co.*, 275 F.3d 1181, 1185 (9th Cir. 2002).

To establish a prima facie case of FMLA interference, a plaintiff must show (1) she was eligible for FMLA protection, (2) the FMLA covered her employer, (3) she was

entitled to leave under the FMLA, (4) she provided sufficient notice of her intent to take leave, and (5) her employer denied her FMLA benefits to which she was entitled. *Escriba v. Foster Poultry Farms, Inc.*, 743 F.3d 1236, 1243 (9th Cir. 2014) (quoting *Sanders v. City of Newport*, 657 F.3d 772, 778 (9th Cir. 2011)). Here, Plaintiff's claim struggles to get off the ground. The obvious pitfall is whether Plaintiff was entitled to FMLA leave after her surgeon cleared her for work.

The FMLA states, "[A]n eligible employee shall be entitled to a total of 12 workweeks of leave during any 12-month period . . . [b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1). The term "serious health condition" means "an illness, injury, impairment, or physical or mental condition that involves . . . continuing treatment by a health care provider." *Id.* § 2611(11). Thus, to avoid summary judgment, Plaintiff must identify evidence that indicates she was suffering from a health condition that rendered her unable to perform the functions of her employment position.

In this case, when pressed for evidence at oral argument, Plaintiff's counsel conceded that the only evidence of her entitlement to FMLA leave is the January 15 note from her primary care physician's assistant. (ECF No. 35.) Simply put, this is not enough to create a "genuine" dispute. "If the evidence is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–50 (citations omitted). Likewise, "in the event the trial court concludes that the scintilla of evidence presented supporting a position is insufficient to allow a reasonable juror to conclude that the position more likely than not is true, the court remains free . . . to grant summary judgment." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 596 (1993). In addition, "when opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

A doctor's note lacking even the most basic detail, including Plaintiff's impairment, is insufficient to demonstrate Plaintiff's entitlement to leave under the FMLA. *See Pivac v. Component Servs. & Logistics, Inc.*, No. 8:12-CV-66-T-EAK-AEP, 2013 WL 1104750, at *9 (M.D. Fla. Mar. 18, 2013) ("[T]he only thing the Plaintiff has established is that she told the doctor she did not feel like working and he gave her a note to excuse her from working."), *aff'd*, 570 F. App'x 899 (11th Cir. 2014). Under a separate FMLA provision but for similar reasons, courts have concluded that vague, unspecific doctor's notes do not give employers adequate notice to trigger affirmative obligations. *See de la Rama v. Illinois Dep't of Hum. Servs.*, 541 F.3d 681, 687 (7th Cir. 2008) (holding that "calling in sick" does not give an employer notice of intent to take FMLA leave, "even if the employee provides her employer with a doctor's note if the note does not convey the seriousness of her medical condition"); *Mondonedo v. Frito-Lay, Inc.*, No. CIV. PJM 11-570, 2012 WL 1632834, at *4 (D. Md. May 8, 2012) (deciding that a doctor's note that stated "Sick leave 1/9/09–1/23/09" without "indicat[ing] what ailment [plaintiff] was suffering from" did not give defendant notice to trigger its FMLA obligations); *Jury v. Boeing Co.*, No. C13-1921RSL, 2015 WL 1849527, at *4 (W.D. Wash. Apr. 22, 2015) (deciding a "doctor's note stating that he had a cervical strain" was insufficient to trigger defendant's duty to investigate). As such, the January 15 doctor's note is merely a "scintilla of evidence" and does not create a genuine dispute. *See Daubert*, 509 U.S. at 596.

Moreover, the January 15 doctor's note is "blatantly contradicted" by the record in this case. *See Scott*, 550 U.S. at 380. The January 8 note clearing Plaintiff for work was signed by Plaintiff's surgeon, the doctor more relevant to her surgical recovery; was written immediately after a post-surgery follow-up visit; and was far more detailed and specific. (JSUF ¶ 36.) It constitutes strong evidence of Plaintiff's ability "to perform the functions of the position." *See* 29 U.S.C. § 2612(a)(1). Additionally, the January 22 surgeon's note further contradicts the January 15 primary care physician's assistant note. To reiterate, in another After Visit Summary on January 22, Plaintiff's surgeon wrote,

"Of note, I see in the chart that she got an extension for her disability through her primary care provider's office. In my opinion there is no reason that she should not be able to work at this time with regards to recovering from the surgery with me. She can wear a cotton ball in her ear when she is working to collect the otorrhea." (JSUF ¶ 54; Ex. K to Diton Decl. 88, ECF No. 21-4.)

Thus, Plaintiff's only evidence of her entitlement to leave in mid-January 2021 is both insufficient due to its vagueness and blatantly undermined by other evidence in the record. The Court finds there is no genuine dispute because no reasonable trier of fact could decide in Plaintiff's favor. *See Anderson*, 477 U.S. at 248.

### 2. Retaliation for Requesting or Using FMLA Leave

In her second FMLA claim, Plaintiff alleges Defendant violated 29 U.S.C. § 2615(a)(2) by terminating her for exercising her FMLA leave rights. But circuit precedent forecloses this cause of action. The Ninth Circuit explained:

> We note that some circuits have invoked § 2615(a)(2) in cases . . . where the plaintiff was subjected to an adverse employment action for taking FMLA protected leave. In this circuit, however, we have clearly determined that § 2615(a)(2) applies only to employees who *oppose* employer practices made unlawful by FMLA, whereas, § 2615(a)(1) applies to employees who simply take FMLA leave and as a consequence are subjected to unlawful actions by the employer.

*Xin Liu*, 347 F.3d at 1133 n.7 (citing *Bachelder*, 259 F.3d at 1124).

Here, the Amended Complaint alleges, "Defendant violated FMLA by retaliating against Plaintiff for exercising her rights under FMLA, including, without limitation, by Defendant adversely impacting Plaintiff's employment in whole or in part by terminating Plaintiff's employment when she sought to exercise and/or did exercise rights under FMLA." (FAC ¶ 120.) This claim relies on 29 U.S.C. § 2615(a)(2), and the Amended Complaint cites cases from the Tenth and Third circuits. (*Id.* ¶ 116 ("Courts have treated adverse actions taken by an employer in response to an employee exercising his or her rights under the FMLA as retaliation or discrimination prohibited by 29 U.S.C. § 2615(a)(2).").) But, as *Bachelder* and *Xin Liu* make clear, the Ninth Circuit has rejected

these sister circuits' interpretation of the FMLA. In the Ninth Circuit, Section 2615(a)(2) does not apply to employees *exercising* their rights under the FMLA, but rather applies only to employees *opposing* employers' practices that violate the FMLA. *Xin Liu*, 347 F.3d at 1133 n.7; *Bachelder*, 259 F.3d at 1124. There is no evidence suggesting that Plaintiff was fired because she opposed Defendant's leave policies. Therefore, Defendant is entitled to summary judgment.[3]

## IV.    CONCLUSION

In light of the foregoing, Defendant's Motion for Summary Judgment is **GRANTED**. (ECF No. 21.) The Clerk of the Court is directed to enter judgment in favor of Defendant and close the case.

**IT IS SO ORDERED.**

DATED: February 27, 2023

Hon. Cynthia Bashant
United States District Judge

---

[3] Conceivably, Plaintiff could have attempted to argue retaliation under 29 U.S.C. § 2615(a)(1) (FMLA discrimination). But Plaintiff failed to voice this argument in her briefing or at oral argument. At oral argument, the Court questioned Plaintiff's counsel on Plaintiff's entitlement to leave, giving counsel the opportunity to clarify the argument. Plaintiff's counsel responded that Plaintiff was entitled to FMLA leave at the time of her termination and pointed to the January 15 note from Plaintiff's primary care physician's assistant as evidence. Plaintiff's counsel made no attempt to argue retaliation. Simply put, Plaintiff fails to support the "factual position" that she was fired in retaliation for previous FMLA-protected leave. *See* Fed. R. Civ. P. 56(c) ("A party asserting that a fact . . . is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record . . . or (B) showing that the materials cited do not establish the . . . presence of a genuine dispute . . . .").